FILED
AUST. N. DIVISION

2002 JL 16  PH 1: 38

IN THE UNITED STATES DISTRICT COURT  EASTERN DISTRICT OF
IN AND FOR THE WESTERN DISTRICT  U.S. CLERK'S OFFICE
AUSTIN DIVISION  BY: _____
DEPUTY

| | | |
|---|---|---|
| Russell Mortland, in his private capacity, and wife Tina Mortland, in her private capacity<br>Plaintiffs' | § § § § § | Case Number **A02 CA 435 JN** _____ |
| v. | § § | PETITION TO PERPETUATE |
| CONSECO FINANCE,<br>and 12 Jane & John Does in their private and official capacities<br>Defendants' | § § § § § | TESTIMONY |

State of Texas    §
                 § ss.  Verified Petition
County of Hays §

Petitioners' Russell & Tina Mortland submit this Verified Petition to the Judicial side of the court under Rule 27(a) & Rule 34 of the Federal Rules of Civil Procedure to perpetuate testimony of CONSECO FINANCE  (hereafter "CONSECO") including but not limited to, production of documents, admissions, testimony by deposition or arbitration and state the following:

1. Petitioners are Russell & Tina Mortland, and can be reached at 1550 Darden Hill Road, Driftwood, Texas 78619 in Hays County Texas;  Defendant is CONSECO FINANCE can be reach through Operations Manager Brad Hardwick at 7800 IH 10 West,  Suite 200, San Antonio, Texas 78230-4749.

2. The subject matter of the expected action involving (commerce) alleged loan (#27340890-6) is including but not limited too, Doctrine of Good Faith and Fair Dealing, Constructive Fraud, Fraud in the factum, Fraud in legum, Fraudulent Concealment in execution, non disclosure of matter

\

facts, Mail Fraud, unjust enrichment, violations of the Federal Fair Debt Collection Practices Act, Federal Truth in Lending Law, Money Lent, failure of Generally Accepted Accounting Principles (GAAP), Breach of Contract, Failure of Consideration, Civil Conspiracy, Deceptive Trade Practices Act (DTPA), Conversion, and Filing a Fraudulent Lien on Real Property.

3. Petitioners interest in the subject matter of the expected action is as the injured parties.

4. Petitioners are presently unable to bring this action or cause it to be brought because CONSECO has willfully and deliberately failed to provide documents, admissions, and provide names address and contact information of people needed to get to the truth of the matter. Several requests have been sent by Certified Mail to the CONSECO legal department for this information. CONSECO's legal department will not respond to the issues and requests. If any correspondence is sent to plaintiffs from CONSECO legal department, it is anonymous and unsigned.

5. Petitioners expect that CONSECO and its agents, employees and several John & Jane Does will be an adverse party to this action.

6. Petitioners desire to perpetuate testimony from CONSECO, including but not limited to, production of documents, admissions, names address and contact information of people necessary to get to the truth of the matter and the testimony of John or Jane Doe representing CONSECO who have knowledge of CONSECO loan procedure with respect to the purported loan made to plaintiffs.

7. Petitioners expect to obtain information and testimony about the purported loan CONSECO claims to have with the plaintiffs.

8. Petitioners need to perpetuate this testimony because CONSECO willfully and deliberately did not give due performance and full disclosure to the plaintiffs. CONSECO has evaded all efforts

of the plaintiffs to show CONSECO has given Due Performance and Full Disclosure. Plaintiffs will suffer substantial injury if this testimony is not ordered by the court and justice would not be served.

9. Petitioners plan to establish by this testimony that: 1) CONSECO committed the actions and violations of laws describe in paragraph 2; and 2) were deliberately and willfully done by CONSECO by conspiring with other parties to defraud the plaintiffs of future labor (Money) and illegally (fraud) obtain collateral (property) against the plaintiff private property.

10. Petitioners have contacted CONSECO several times by Certified Mail seeking to arbitrate this dispute. The purported loan contract (copy enclosed) states:

> *"15. ARBITRATION - All disputes, claims or controversies arising from or relating to this agreement or the relationship which results from this agreement, or the validity of this agreement clause, or the entire agreement, shall be resolved by binding arbitration by one arbitrator selected by you with my consent."*

11. CONSECO has willfully and deliberately failed to respond to this arbitration request. Petitioners prefer to arbitrate this dispute under the Federal Arbitration Act Title 9 of the U.S. Code. On or about July 1, 2002 National Arbitration Forum in Minneapolis receive a claim (true & correct copy enclosed) from the plaintiffs seeking to arbitrate this dispute. In a letter received by plaintiffs dated July 8, 2002 (true & correct copy enclosed) from National Arbitration Forum refuses to arbitrate this dispute without CONSECO agreeing to the arbitration. National Arbitration Forum also took out the filing fee for this arbitration case from plaintiffs checking account on or about July 10, 2002 in the amount of $774.52. Effective July 1, 2002 the fees involved in arbitrating this dispute with National Arbitration Forum have increase significantly and is now a burden on the plaintiffs to pay.

WHEREFORE, Petitioners move this court to order CONSECO to give Due Performance and Full Disclosure with this perpetuate testimony and to arbitration this dispute with National Arbitration Forum and the burden place on CONSECO with respect of paying all fees and costs of the arbitration. Petitioners also seek in the order of this court, that all activity concerning this account will be suspended until such time as it can be adjudicated or arbitrated.

Respectfully submitted,

*Russell Mortland*

*Tina Mortland*

Russell & Tina Mortland
1550 Darden Hill Road
Driftwood, Texas 78619
512-894-0724 Home

## VERIFICATION

State of Texas     §
                   § ss.
County of Hays     §

Before me, a notary public, on this __*15*__ day of July 2002 did personally appeared a male & female citizens of Texas named Russell & Tina Mortland, known to me to be over the Age of Majority and who's name is subscribed to the forgoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct. Russell & Tina Mortland further certified by signing of this Petition to Perpetuate Testimony that all documents accompanying this Petition are true and correct copies of the original documents.

*DeWayne G. Brown*

DEWAYNE G. BROWN, JR. - Notary Public
in and for the State of Texas
Commission Expires: 03-17-2004

NOTARY PUBLIC
DE WAYNE G. BROWN, JR.
Notary Public, State of Texas
My Commission Expires 03-17-04
STATE OF TEXAS

Green Tree Financial Corporation-Texas
GT-10-44-101 (6/99) MH-RIC

**TEXAS**

## MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT (CONV. - FHA - VA) (SI)

Date 8/29/01

BUYER: MORTLAND, TINA M.
MORTLAND, RUSSELL D., 1550 DARDEN HILL RD, DRIFTWOOD, TX 78619

SELLER: PALM HARBOR HOMES 1,L.P., 6317 E. BEN WHITE, AUSTIN, TX 78741

ASSIGNEE: CONSECO FINANCE SERVICING CORP., 7800 IH 10 WEST SUITE 200, SAN ANTONIO, TX 78230

### FEDERAL TRUTH-IN-LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $ 16590.00 ) |
|---|---|---|---|---|
| 13.00% | $ 201753.07 | $ 67649.33 | $ 269402.40 | $ 285992.40 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | 748.34 | Monthly beginning _____ (estimate) 10-1-01 RM/SM |

SECURITY: I am giving a security interest in:
XX The goods or property being purchased N/A Other (Describe): N/A

FILING FEES: $ 55.00 . LATE CHARGE: If a payment is more than 15 days late, I will be charged _____
$5.00 or 5.0% of the unpaid amount of the installment, whichever is less .

PREPAYMENT: If I pay off early, I N/A may XX will not be charged a prepayment penalty.
ASSUMPTION: Someone buying my home may, subject to conditions, be allowed to assume the remainder of the Contract on the original terms.
See the Contract document below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF THE AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Sale Price (including Taxes of) $ 166.33 | $ 82367.33 | |
| 2. Gross Trade-in .. ..... .. $ .00 | | |
| Less Amount Owed on Trade-in $ .00 | | |
| Net Trade-in .. ......... $ .00 | | |
| Description: Make _____ | | |
| Year C000 Size 00 X 00 | | |
| 3. Cash Down Payment .... $ 16590.00 | | |
| 4. Total Down Payment................................ - $ | 16590.00 | |
| 5. Unpaid Balance of Cash Sale Price (1 - 4)... + $ | 65777.33 | |
| 6 Paid to Public Officials .. ... ................ + $ | 55.00 | |
| 7. *Paid to Insurance Companies .................... + $ | 1067.00 | |
| 8. Paid to Appraiser....................................... + $ | .00 | |
| 9 *a Paid to WARRANTY INSURANCE ................ + $ | 750.00 | |
| b. Paid to_____ + $ | .00 | |
| c. Paid to_____ + $ | .00 | |
| d. Paid to_____ + $ | .00 | |
| e. Paid to_____ + $ | .00 | |
| f. Paid to_____ + $ | .00 | |
| g. Paid to_____ + $ | .00 | |
| 10. Principal Balance (5 + 6 + 7 + 8 + 9 a.-g.) .... + $ | 67649.33 | |
| 11. Prepaid Finance Charges................ - $ | .00 | |
| 12. Amount Financed (10 - 11) ................. $ | 67649.33 | |

### PHYSICAL DAMAGE INSURANCE

Physical Damage Insurance is required but I may obtain it from anyone I want that is acceptable to you. If I get the insurance checked below from you or through you, I will pay you $ 1067 00 for insurance protection for a term of ___ years.

| | Premium |
|---|---|
| ___ Comprehensive | $_____ |
| ___ Fire and Theft | $_____ |
| N/A Flood | $_____ |
| ___ Liability | $_____ |
| X Other PERSONAL EFFECTS/ADJACENT STRUCT. | $_____ |

X Russell Mortland X Tina Mortland 8-29-01
Signature of Buyer(s) Insured All Right Reserved Date

### OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE

Credit Life and Disability Insurance are not required to obtain credit and will not be provided unless I sign and agree to pay the additional cost.
The term of this insurance is 00 years.

| | | |
|---|---|---|
| N/A Single Credit Life Insurance | $_____ | .00 |
| N/A Joint Credit Life Insurance | $_____ | .00 |
| N/A Single Credit Disability Insurance | $_____ | .00 |
| Total | $_____ | |

X
Signature of Buyer(s) Insured                    Date

### CONTRACT AND SECURITY AGREEMENT

1. DEFINITIONS: "I", "me", "my" means the Buyer(s) "You", "your" means the Seller and also the Assignee (after the Contract is assigned by Seller). The "parties" means the Buyer and Seller, "Manufactured Home" means the manufactured home, any other property described on page 2 and the real estate described above, if applicable "Contract" or "Agreement" means this Retail Installment Contract and Security Agreement and separate Deed of Trust or Mortgage if applicable.
* Seller and/or Assignee and/or their affiliates may receive commissions or other compensation from businesses to whom these charges are due.

| NEW OR USED | | YEAR AND MAKE | Manufactured Home MODEL | SERIAL NUMBER | SIZE |
|---|---|---|---|---|---|
| N | 2002 | PALM HARBOR | PHT364D8 | PH0516357AB | 32 X 64 |

__X__ Stove     __X__ Refrigerator     _____ Washer     _____ Dryer     __X__ Air Conditioner     _____ Wheels/Axles

Other (Describe)    DISHWASHER

**2. PURCHASE:** I have the option of buying the Manufactured Home for the cash price or buying on credit. The cash price is shown on page 1 as the "Cash Sale Price", and the credit price is shown on page 1 as the "Total Sale Price". I choose to buy on credit.

**3. SECURITY INTEREST:** I give you a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home and property added or attached to it, and the real estate described in the separate Deed of Trust or Mortgage if applicable, to secure my obligation under this Contract. I also grant you a security interest in any interest I may have in proceeds and premium refunds of any insurance and service contracts purchased with this Contract. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home. To the extent, if any, that any Contract (whether or not accompanied by any one or more original) constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in the applicable jurisdiction) no security interest in any Contract may be created in any document(s) other than the original.

**4. PAYMENTS AND LATE CHARGE:** I will pay you the amount shown as the "Total of Payments" according to the payment schedule shown on page 1. I also agree to pay a late charge for late payment as shown on page 1.

**5. NSF FEE:** If any payment instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of __N/A__
N/A

**6. PREPAYMENT: I MAY PREPAY THIS LOAN IN WHOLE OR IN PART AT ANY TIME. I WILL NOT PAY A PENALTY UPON PREPAYMENT UNLESS OTHERWISE STATED IN THE NEXT SENTENCE. IF I PREPAY IN FULL WITHIN __N/A__ MONTHS OF THE DATE OF THIS NOTE, I WILL PAY YOU A PENALTY OF**
N/A
N/A **. PARTIAL PREPAYMENTS WILL NOT EXCUSE OR REDUCE ANY LATER SCHEDULED PAYMENT UNTIL THIS NOTE IS PAID IN FULL.**

**7. SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The interest rate is _____ 13.00% per annum

Interest will accrue upon the unpaid principal balance outstanding from time to time until paid in full. The Finance Charge, Total of Payments and Payment Schedule were computed based on the assumption that payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will be equal to all unpaid sums due under this Contract. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

**8. NO WARRANTIES:** I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home AS IS and WITH ALL FAULTS and **THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME.** I agree that any implied warranty of merchantability and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufactured Home. This No Warranties provision does not apply to the extent that any law prohibits it and it does not cover any separate written warranties.

**9. PROTECTION OF THE MANUFACTURED HOME:** I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell, lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless you consent in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.

**10. PROPERTY INSURANCE:** I am required to insure the Manufactured Home against physical damage for the term of the Contract at my expense. The minimum coverage will be Fire/Theft and Combined Additional Coverage in an amount equal to the actual cash value of the Manufactured Home. The policy will contain a loss payable clause protecting you (as your interest may appear) and provide for 10 day notice of cancellation to you. I will arrange for you to be named loss payee on the policy. I agree to provide you written evidence of insurance as requested by you from time to time. I have the right to choose the person through whom the required insurance and any other insurance elected by me is to be obtained. I **DO NOT HAVE TO PURCHASE INSURANCE FROM A COMPANY DESIGNATED BY YOU.** I also have the right to furnish the required insurance and any other insurance I elect through any insurance company so long as the insurance is written by a company authorized to transact business in Texas. You have the right for good cause to refuse to accept any insurance policies I offer. If you finance the purchase of any such insurance for me, I will repay you for the cost of that insurance, plus interest up to the contract rate of interest. I authorize you to furnish account data to a licensed insurance agent of your choice so such agent may solicit the purchase of credit, property, warranty or other insurance from me. I agree that the insurance company may make any payments due under the policy directly to you, and I direct the insurance company to do so. You may do whatever you think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home. I give you power of attorney (which I cannot cancel) so that you may do whatever you need to in order to collect the insurance proceeds. If I fail to obtain, maintain or pay for the required insurance, or if I fail to arrange for you to be named as loss payee, you may treat that as a default of my obligations under this Contract, and you may (but are not required to) purchase such insurance. If you purchase such insurance, I will immediately repay you for any amounts you spend in purchasing the insurance, plus interest up to the contract rate of interest or, at your option, pay you over time as a workout of the obligation. If I owe you for any insurance (or for late charges, attorneys' fees or collection costs), I understand that I owe an additional sum for these debts beyond my monthly principal and interest payment. My monthly payment will therefore be greater than that stated on page 1 until such additional debts are paid in full.

**11. DEFAULT:** If I default in performing any obligation herein, or if I file a case or someone else files a case against me under the United States Bankruptcy Code, after providing me with any 30-day notice and opportunity to cure provided by the Texas Credit Code (except if I voluntarily surrender or abandon the Manufactured Home), you may accelerate the maturity of any part or all of the amount owing hereunder. If this Agreement is referred for collection to an attorney, I agree to pay an attorney's reasonable fee, all court costs and disbursements. I shall be liable for all actual and reasonable out-of-pocket expenses incurred in connection with the repossession and foreclosure of the collateral. You may waive any default in any reasonable manner without waiving the default remedied or any other

prior or subsequent default, and after re     .essiongive any notification required by the      as Business and Commerce Code by mailing such notice, postage prepaid, at least 10 days before the event, if any, which is the subject of such notice, to my address provided in this Agreement which shall constitute reasonable notice to me. You shall have all the rights and remedies of a creditor under the Texas Business and Commerce Code. Upon default and having declared said indebtedness due, you may ask me to pay the entire balance. If I fail to pay the entire balance within a reasonable time, you may either foreclose through the courts or may proceed to sell the Manufactured Home pursuant to the Texas Business and Commerce Code. I expressly agree that you may become a creditor of said collateral at any public sale just as any other person. I shall be liable for any deficiency after application of the proceeds of such collateral to the obligation. I agree in the event of default and acceleration to assemble the collateral and make it available to you at a place reasonably convenient to both parties.

**12. NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Contract shall be given in writing by mailing such notice by certified mail, addressed to me at the Manufactured Home address or at such other address as I may designate by notice to you in writing, and (b) any notice to you shall be given in writing by certified mail, return receipt requested, to your address stated herein or to such other address as you may designate by notice to me in writing.

**13. ATTORNEY'S FEES:** If you hire an attorney who is not a salaried employee to collect what I owe under this Contract or to get possession of the Manufactured Home or to enforce my agreements herein, I may be required to pay your reasonable attorney's fees plus court costs and actual out-of-pocket expenses. If state law provides for a limit on attorney's fees, I will pay only the legal limit. In the event of repossession, sequestration or other action necessary to secure possession of the Manufactured Home, I will pay actual and reasonable out-of-pocket expenses incurred in connection with repossession or foreclosure including costs of storing, reconditioning and reselling the Manufactured Home, subject to the standards of good faith and commercial reasonableness set by the Texas Business & Commerce Code, as amended.

**14. MISCELLANEOUS PROVISIONS:** This written Contract is the only agreement that covers my purchase of the property. This Contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you. You can decide not to use or enforce any of your rights under this Contract without losing them. For example, you can extend the time for making some payments without extending others. If any part of this Contract cannot be enforced because of a law which prohibits it, all other parts can still be enforced. I agree to cooperate with you regarding any requests after closing to correct errors made concerning this Contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction.

**15. ARBITRATION:** All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this Agreement. The parties agree and understand that the arbitrator shall have all powers provided by law and the Agreement. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this Agreement, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

**16. ADDITIONAL TERMS:**

This Contract will not be accepted by the Assignee for assignment until all documentation relating to it has been received by, reviewed by, and accepted by the Assignee.

**NOTICE: ANY HOLDER OF THE CONSUMER CREDIT CONTRACT SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

To contact the Assignee about this account, call (800) 438-2026. This contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 North Lamar Blvd., Austin, Texas 78705-4207. Phone (512) 936-7600 or (800) 538-1579. Contact the commissioner relative to any inquiries or complaints.

NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS. 3. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND, UNDER CERTAIN CONDITIONS, MAY OBTAIN A SUBSTANTIAL REFUND OF THE FINANCE CHARGE.

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT.

X _Russell D. Mortland_     8-29-01      X _Tina M. Mortland_     8-29-01
Signature of Buyer RUSSELL D. MORTLAND    Date     Signature of Buyer TINA M. MORTLAND    Date

---

### ASSIGNMENT BY SELLER

For good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Seller hereby sells, assigns, and transfers its entire right, title, and interest in the Contract and the property described therein (the "Property") to Assignee. Such assignment is made pursuant to the terms contained herein and in a separate Dealer Agreement, which is incorporated herein by reference; and pursuant to such policies, procedures, and requirements as issued by the Assignee from time to time.

IN ADDITION TO THE ABOVE, this Assignment includes that certain provision to follow, provided that, if none of the following provisions has been checked by the Seller, this Assignment shall be considered to have been checked "With Recourse": A. "Without Recourse". The assignment of the Contract is and shall be without recourse against the Seller except as provided above and in any separate dealer agreement between Seller and Assignee relating to the purchase of Contracts. B. "Limited Recourse". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Recourse", the Seller will, upon demand, repurchase the Contract from Assignee for the full amount remaining unpaid under the Contract. C. "Repurchase". If the Assignee repossesses the Manufactured Home, the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract. D. "With Recourse". The Seller unconditionally guarantees payment of the full amount remaining unpaid under the Contract and agrees to purchase the Contract from the Assignee, upon demand, for the full amount then unpaid, whenever the Contract shall be in default. E. "Limited Repurchase". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Repurchase", the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract if the Assignee repossesses the Manufactured Home.

Seller, by signing below, executes this Contract and also assigns the same to the Assignee in accordance with the foregoing provisions. The Seller's Assignment will also include that certain provision set forth above which is checked below:

PALM HARBOR HOMES I, L.P.

By: X _Marty Munk_     Date: 8-29-01
(Seller)     Title: Operations Manager

( X ) A. Without Recourse  (    ) B. Limited Recourse  (    ) C. Repurchase  (    ) D. With Recourse  (    ) E. Limited Repurchase
_____ Payments                                                                                              _____ Payments



NATIONAL

ARBITRATION

FORUM

July 8, 2002

Russell and Tina Mortland
1550 Darden Hill Road
Driftwood, TX  78619

**RE:  Russel Mortland & Tina Mortland v Conseco Financial Corp.**
**File Number:  FA0207000114761**

Dear Mr. and Mrs. Mortland:

The above referenced arbitration claim has been received by the National Arbitration Forum.  However, in reviewing your claim the Forum has identified the following deficiencies:

▪   Please forward a copy of the Arbitration Agreement between the Parties to the Forum. The Forum cannot accept your claim unless all of the Parties have agreed to go to Arbitration and use the services of The National Arbitration Forum.

Also, the Forum has now revised the Code of Procedures as of July 1, 2002.  Since your claim was received on July 1st, it will now follow these new rules  I have enclosed a copy of the new Code for you.

In order for the Forum to proceed with the arbitration of this case, you will need to rectify the deficiencies within **20 days** from the date of this letter.

**\*Please Do Not Serve Respondent with your Claim until the above Deficiencies are**
 **rectified.**

Sincerely,

Michaelene Frederickson
Case Management Supervisor



## NATIONAL

## ARBITRATION

## FORUM

CERTIFIED MAIL  7002 0510 0000 0759 7960

Date:  June 25. 2002

| | |
|---|---|
| Name, address, and phone numbers for **Claimant(s)**<br>　Russell & Tina Mortland<br>　1550 Darden Hill Road<br>　Driftwood, Texas 78619<br>Telephone: 512-894-0724　　Cell 512-845-5209<br>Fax: none　　　Email Address:  rtm@texas.net | **CLAIM FORM** |
| | File Number: _____<br>　　　　　*(To be assigned by the Forum)* |
| Name, address, and phone number for **Respondent(s)**<br>Conseco Finance Corp.<br>ATTN:  Daniel J. Collins, Corporate Attorney<br>300 Landmark Towers<br>3435 St Peter Street<br>St Paul, Minnesota 55102-1637 | Filing Date: _____<br>　　　　*(To be assigned by the Forum)* |
| Telephone: 651-293-4800　　　Fax: 651-293-5818 | |

> **NOTICE TO RESPONDENTS:  This is an Arbitration Claim against you for money or other relief. You have <u>thirty (30) days</u> to serve the Claimant(s) and file with the Forum a written Response and/or file a Counter Claim, Cross-claim or Third Party Claim in accord with the Code of Procedure.  If you <u>Do Not</u> serve the Claimant(s) and file with the Forum a written Response within 30 days, an Award may be entered against you.  You can obtain a free copy of the Code from the Claimant or the Forum.**

**Claimant(s) states:**  We request a Document Hearing.

State of Texas　　§
　　　　　　　　§ ss.
County of Hays　§

### AFFIDAVIT OF FACTS

　　I (We), Russell & Tina Mortland, (*hereafter Mortland's*) do hereby declare that the following statements are true, correct and based on our own personal knowledge of the facts and we are over the Age of Majority. This Affidavit of facts is made under the penalties for perjury.

　　In June of 2001 our family suffered a mobile home fire. It was a total loss. We started looking for another mobile home in the Austin area. We settled on getting a home from PALM HARBOR HOMES in Austin, Texas. Joe Pudwill, (hereafter *Joe*) Sales Consultant told us that we were turned down for several

6/1/01

1

loans but PALM HARBOR'S FINANCE DEPARTMENT arranged a loan through CONSECO FINANCE SERVCING COPORATION in San Antonio Texas. After reading the paperwork, CONSECO FINANCE wanted $24,000 down payment. We refuse to give that much down. We told them we would give $15,000 down. Joe stated that PALM HARBOR FINANCE DEPARTMENT would have to talk to CONSECO FINANCE and see what they could do about the down payment. PALM HARBOR FINANCE DEPARTMENT negotiated with CONSECO FINANCE SERVCING COPORATION 7800 IH 10 West Suite 200 San Antonio, Texas 78230 Texas office to get the down payment reduced thereby participated in the violations of law concerning the purported loan.

On July 14, 2001 we returned to PALM HARBOR HOMES to met with Joe and see if the down payment problem was taken care of. Joe informed us that CONSECO FINANCE would require approximately $16,000 down payment. We agreed to that amount. At that time we put down $4100 check for down payment on and conducted the paperwork to ordered a new mobile home. We signed several documents that day including a document titled Arbitration Agreement. Joe Pudwell stated that it was PALM HARBOR'S practice to get their customers to sign an arbitration agreement should there be any problems between parties. I told him we would sign, but we would reserve our rights above our signatures by printing *"All Rights Reserved"* above our names. Joe said he had no problem with that. We sign the document and put *"All Rights Reserved"* above our names. After we finish that day Joe state he would have to get with the factory to give us a possible delivery date of the trailer.

Approximately 7 days later, Russell, received a phone call at work on the barrowed cell phone of Enrique Alvarez, from Joe. Joe stated that corporate had a problem with the paperwork and the operations manager would be calling me about it. Later the same day Russell received another phone call at work on the barrowed cell phone of Enrique Alvarez, from a person claiming to be the operation manager from corporate. It was a male person, but don't remember his name. We had some chitchat at first and then he stated "PALM HARBOR will not build or sell us a mobile home without us resigning another Arbitration Agreement with PALM HARBOR and not reserve our rights when we sign the Arbitration Agreement". After some discussion and arguments I told him we would resign the arbitration agreement. Our signing this second Arbitration Agreement was done under threat, duress and coercion. The threat, duress and coercion being *"Palm Harbor will not build or sell us a mobile home without us resigning another Arbitration Agreement with Palm Harbor and not reserve our rights when we sign the Arbitration Agreement".* Joe called later that night and ask what we planned on doing. I told him we would be out there Saturday July 21, 2001 to sign another Arbitration Agreement.

On July 21, 2001 we went to PALM HARBOR HOMES to meet with Joe and sign another Arbitration Agreement. I saw the first signed Arbitration Agreement in the paperwork. I ask Joe what he was going to do with it. He stated he was going to throw it away. I told him I wanted it for my records, so I took it. We then left PALM HARBOR HOMES several minutes later.

On August 29, 2001, we went to PALM HARBOR'S FINANCE DEPARTMENT to take care of final paperwork. We signed and print *"All Rights Reserved"* on a promissory note for CONSECO FINANCE SERVCING COPORATION 7800 IH 10 West Suite 200 San Antonio, Texas 78230 through PALM HARBOR FINANCE DEPARTMENT OFFICE acting as agent for CONSECO. PALM HARBOR'S employee named Marty Mack was the person doing this paperwork.

On or about September 5, 2001 I, Russell, received a cell phone call on the barrowed cell phone of Enrique Alvarez. There were 2 different calls from females who claimed to work for PALM HARBOR. They stated that we had to re-sign the loan paperwork because of some problem, but would not elaborate on what the problem was. Then shortly after that Joe called the cell phone and said he would come to the Motel where we were staying at to re-sign the paperwork or we would not get our trailer. Joe then called my wife Tina at her work and told her we all would meet at The Heart of Texas Motel. Joe arrived about an hour later and then my wife Tina arrived. The only paperwork that Joe had was a

6/1/01

2

promissory note for us to sign. I ask Joe why we are re-signing this all over again. Joe's reply was *"Marty Mack messed up the paperwork and it had to be done again. He also stated that Marty Mack doesn't work for PALM HARBOR any more."* I signed it, but as I was signing it Joe stated not to print All Rights Reserved on the document. Joe then stated that we couldn't do that again. He also stated that we had to date this document the same as the original promissory note done on August 29, 2001. Tina then signed the promissory note. After Joe left I told my wife, *"I smell a con job here."* It is our belief that CONSECO FINANCE would not except the first promissory note signed with *"All Right Reserved"* so then this story of the screwed up paperwork had to be hatched to get us to sign another promissory note to satisfy CONSECO FINANCE. The promissory note that CONSECO has in its possession now, is the second promissory note we signed on or about September 5, 2001. This is the same promissory note that we were told not to put *"All Rights Reserved or the current date it was signed"*. That is why it has the August 29, 2001 on the promissory note that CONSECO FINANCE has in their possession.

The principal sum of this promissory note was $67,649.33. We received a line of credit of equal value. Since that time, we have learned that CONSECO FINANCE did not fund the transaction (which was represented by PALM HARBOR FINANCE DEPARTMENT and CONSECO FINANCE to loan to us) and neither party discloses these material terms of the agreement. In fact, CONSECO FINANCE did not risk any of its assets in the agreement.

PALM HARBOR HOMES and its employee's along with CONSECO FINANCE SERVICING CORPORATION and it's employee's known or should have known to disclose the nature of the agreement at the time of purchase, along with its policies and procedures, the agreement is null and void. According to the Generally Accepted Accounting Principles (GAAP) and federal laws regulating lending institutions such as CONSECO FINANCE, our promissory note funded CONSECO line of credit, which was the line of credit given to PALM HARBOR HOMES so we could purchase the manufactured home. The transaction involved us becoming CONSECO creditor by depositing the promissory note, which was done without our knowledge or consent. After we signed the note, CONSECO became the endorsee and deposited it into an undisclosed demand deposit account and then CONSECO returned a line of credit back to us from this account. This line of credit was funded by our promissory note. These terms were not fully disclosed by either party to us. In fact, both PALM HARBOR FINANCE DEPARTMENT and CONSECO FINANCE SERVCING employee's known or should have known that we funded the loan (promissory note) and intentionally concealed that fact.

If we are expected to make good on our obligations, then PALM HARBOR and CONSECO must also be expected and compelled to make good on their obligations. The law imposes these disclosure requirements upon both parties and if we had known the truth prior to signing the promissory note, we would not have entered into the agreement. PALM HARBOR HOMES, PALM HARBOR'S employee's, CONSECO FINANCE SERVICING CORPORATION and it's employee's have committed violations of law, including but not limited too, Constructive Fraud, Fraud in the factum, Fraud in legum Fraudulent Concealment, non disclosure of matter facts, Mail Fraud, unjust enrichment, violations Federal Truth In Lending Law, Generally Accepted Accounting Principles (GAAP), Breach of Contract, Failure of Consideration, Civil Conspiracy, Deceptive Trade Practices Act (DTPA), a Fraudulent Lien on Real Property and Deceptive & Fraudulent Inducement of an Arbitration Agreement using threat, duress and coercion. We both also printed TDC by our signatures on a couple other documents we signed that day. TDC stands for threat, duress and coercion.

In the past couple of months we have researched court cases through varies internet sites (www.versuslaw.com www.findlaw.com etc.) and educated ourselves as to the financing and accounting principals through the Federal Reserve publications, Two Faces of Debt, Modern Money Mechanics, a book about the Federal Reserve Titled "Creature from Jekyll Island", Federal Truth in Lending law, Federal Debt Collection Practices Act law of this Country. We wrote and paid for 3 independent Professional Opinion Letters from Licensed Certified Public Accountants for our education and to verify

what happened during the transaction between PALM HARBER HOMES, CONSECO FINANCE and Mortland's purported loan (promissory note).

PALM HARBOR HOMES and CONSECO FINANCE by law have to follow generally accepted accounting principles (GAAP) according to the Texas Tax Code. PALM HARBOR HOMES and CONSECO FINANCE conducts audits of their corporate books, which are done by CPA's who by law have to follow the Generally Accepted Accounting Principles (GAAP). If they don't follow GAAP then the audit was a fraud. That means the audit must be reissued claiming that GAAP was not followed and the Security & Exchange Commission (SEC) must be informed of a fraud to the Corporation stockholders.

In Todd Ellis Swanson Opinion Letter he stated that:

*"If Conseco claims we are wrong, then I believe Conseco is claiming that it didn't follow the GAAP and the CPA audit claiming GAAP was followed is a fraud and that means that the CPA audit must be reissued claiming that GAAP was not followed and the SEC must be informed of a fraud to the lender stockholders."*

Also the State of Texas Tax Code - Chapter 171 states:

*§ 171.109 (b) except as otherwise provided in this section, a corporation must compute its surplus, assets, and debts according to generally accepted accounting principles. If generally accepted accounting principles are unsettled or do not specify an accounting practice for a particular purpose related to the computation of surplus, assets, or debts, the comptroller by rule may establish rules to specify the applicable accounting practice for that purpose.*

Further Affiant(s) sayeth not.

_____
Russell Mortland

_____
Tina Mortland

JURAT

State of Texas      §
                    § ss.
County of Hays      §

SWORN AND SUBSCRIBE TO before me on this 24th day of June 2002.

_____
DEWAYNE G. BROWN, JR. - Notary Public
in and for the State of Texas
Commission Expires: 03-17-2004

DE WAYNE G. BROWN, JR
Notary Public, State of Texas
My Commission Expires 03-17-04

## Calculating the Total Claim Amount:

| | | |
|---|---|---|
| List Monetary Claim Amount | $ __67,349.23__ | (specify dollar amount ) |
| List Non-Monetary Claim Amount (If Requested) | $ _____ | (specify dollar value of other relief) |
| List Attorneys Fees Amount (If Requested) | $ __10,102.38__ | (specify dollar amount of attorney fees or 15 % of the monetary claim) |
| List Interest Amount accrued)  (If Requested) | $ _____ | (specify dollar amount of interest |
| **Add the above figures** | $ __77,451.61__ | **TOTAL CLAIM AMOUNT** |

## Calculating the Filing Fee:

Use the **Total Claim Amount** and then refer to **Fee Schedule** starting on page 38 of the Code of Procedure.

List the Filing Fee Amount   **$774.52**

Select the Method of Payment for the Filing Fee:  ☐ Check    ☐ Credit Card

Account Type:  ☑ Visa    ☐ MasterCard    ☐ Discover    ☐ American Express

Account Number :  **4744 7210 0057 1046**        Exp. Date: **06/06**

If you are an individual living in poverty who cannot pay a fee, you can request the waiver of the fee under Rule 45.

## Arbitration Award:

If we are successful we request that are award include money claimed, release of lien against Manufactured Home, credit report shown as "paid as agreed" with all credit reporting agencies and cancellation of Manufactured Home Retail Installment Contract.

Do you request that the Arbitration Award include recovery of filing fees, other fees and reasonable costs and expenses incurred during the arbitration process?   ☑ Yes    ☐ No

If there is no Response to the Initial Claim, the Claim will be reviewed by an Arbitrator and an Award may be issued.  If a Response is submitted, the Forum will advise the parties of the hearing.

## Representation Information:

If you are represented and want the Representative to receive all correspondence, list the information below:

Representative's Name:   Russell Mortland, Pro Se

Address: 1550 Darden Hill Road      City:    Driftwood            State: Texas      Zip 78619

Telephone: 512-894-0724   Cell 512-845-5209   Fax Number: None    E-mail: rtm@texas.net

### Claimant's Affidavit of Authenticity:

I/We, Russell & Tina Mortland, assert, under penalty of perjury, that the facts supporting the Claim, the supporting documents and the arbitration agreement are true and correct copies of the originals.


Claimant's Signature: _Russell Mortland_        Date: _6-24-02_

Claimant's Signature: _Tina Mortland_        Date: _6-24-02_

### VERIFICATION

State of Texas          §
                        § ss.
County of Hays          §

SWORN AND SUBSCRIBE TO before me, a notary public, on this 24th day of June 2002 did personally appeared Russell & Tina Mortland, known to me to be over the Age of Majority and who's names is subscribed to the forgoing document, and being by me first duly sworn, declared that the statements therein are made under penalties of perjury and all documents sent concerning this case are true and correct copies of the original and based on our personal knowledge.


DEWAYNE G. BROWN, JR. - Notary Public
in and for the State of Texas
Commission Expires: 03-17-2004

DE WAYNE G. BROWN, JR
Notary Public, State of Texas
My Commission Expires 03-17-04

National Arbitration Forum
Post Office Box 50191
Minneapolis USA 55405-0191
Phone:  (651) 631-1105 or (800) 474-2371
Fax: (651) 631 0802
www.arbitration-forum.com
© 2001 National Arbitration Forum

6/1/01                                                                                      6

# Todd-Ellis; Swanson
## Certified Public Accountant
c/o 111 Mountainside Way
Greenville, South Carolina (29609)
swanson_cpa@hotmail.com
http://webpages.charter.net/swanson_cpa

| | |
|---|---|
| **EDUCATION** | **Bachelor of Science degree in Financial Accounting.**<br>University of North Carolina at Asheville.<br>Graduated Magna Cum Laude with Distinction in Accounting,<br>May 1993.  GPA 3.9.<br><br>**Certified Public Accountant, 1995; North Carolina**<br>**Certified Public Accountant, 1996; South Carolina**<br><br>Passed all four parts of CPA Exam, May 1993. |
| **HONORS AND ACTIVITIES** | United States Army, Air Defense, June 1986 to June 1988;<br>United States Army Reserve, June 1988 to June 1993;<br>Honorably discharged United States Army, June 1993;<br>Received Army Achievement Medal, Good Conduct Medal, 1988;<br>Member Phi Eta Sigma, National Freshman Honor Society;<br>National Dean's List (four years);<br>Received Asheville Rotary Club Scholarship, 1991;<br>Currently involved with Big Brothers/Big Sisters since 1990;<br>1994 Henderson County Big Brother of the Year. |

## EXPERIENCE

| | |
|---|---|
| 1997 – Current | Provide businesses and individuals with private non-negotiable consulting services, pre-arranged engagement services (including IRS Resolution and Debt Cancellation), bookkeeping, payroll and tax services. |
| 1995 - 1997 | **Accountant**<br>Insignia Financial Group, Inc.<br>Reviewed financial statements for portfolio monthly.  Prepared analytical review schedules for public partnerships monthly.  Prepared financial statements for 10-Q's and 10-K's.  Reviewed and/or prepared quarterly cash flow schedules.  Reviewed all GL clerk and/or staff accountant workpapers and journal entries.  Monitored cash reserves and investments.  Reviewed and/or prepared bankruptcy report schedules.  Prepared initial draft of MD&A for assigned public partnerships filed with the SEC. |
| 1993 – 1995 | **Staff Accountant**<br>Joseph W. Smolski, Jr., P.A. Certified Public Accountants<br>Performed monthly and year-end accounting services for a variety of entities including: S and C corporations, partnerships and sole proprietorships.  Prepared payroll tax returns and individual income tax returns.  Assisted in preparing corporate income tax returns. |

# *Todd-Ellis; Swanson*
## *Certified Public Accountant*

December 26, 2001

Russell D. and Tina M. Mortland
c/o  1550 Darden Hill Road
Driftwood, Hays County, Texas

Dear Russell and Tina:

This letter is in response to your recent inquiry requesting I determine the money trail concerning the alleged loan from CONSECO FINANCE SERVICING CORP. (*hereinafter "Conseco"*) to yourselves, RUSSELL D. and TINA M. MORTLAND (*hereinafter "Mortlands"*), according to Generally Accepted Accounting Principles (GAAP).  Before I respond, I would like to give you my professional background.  I am a graduate of the University of North Carolina at Asheville.  I graduated Magna Cum Laude with a B.S. in Financial Accounting.  I am licensed in both North Carolina (License # 23573) and South Carolina (License # 04808) as a Certified Public Accountant.  I have been in the accounting industry for eight years, and I have been licensed for six years.  I have spent most of my career in the public accounting field.  Additionally, I spent approximately a year and a half working for Insignia Financial Group, one of the nations largest multifamily property management groups in their Partnership Accounting office.  Currently, I provide private non-negotiable consultation on individual and business taxation and other accounting matters.  I have enclosed a resume for your review.

This is the presumption I am making in this report.  GAAP has a principle, called the Matching Principle.  The principle works like this.  If a bank accepts cash, checks, negotiable instruments, promissory notes, etc... from a customer and deposits or records the instruments as an asset, there is an offsetting liability that matches the asset they accepted from the customer.  The liability shows they owe the customer the money they accepted from the customer.  From the Federal Reserve Banks own publications, I conclude that two loans were exchanged according to the bookkeeping entries.  The following is based on my understanding of your current situation as you have presented it to me.

I believe that Conseco claims the Mortlands signed a promissory note owing Conseco $67,649.33 and that Conseco lent the Mortlands $67,649.33 of which the Mortlands must repay the alleged loan.  I believe the form, the alleged loan agreement, claims that Conseco lent the Mortlands $67,649.33 but the substance of the alleged loan, the bookkeeping entries or Generally Accepted Accounting Principles (GAAP), show that the opposite occurred of what the form says.  What actually happened as proven by GAAP and the bookkeeping entries is opposite of what is written in the alleged loan agreement.  According to the bookkeeping entries, GAAP, the Mortlands provided the money, money equivalent, capital, funds or thing of value, (*hereinafter "money"*) to fund what Conseco claims is the money lent to the Mortlands.  It appears Conseco substantially changed the form and substance of the alleged loan, thereby changing the cost and risk of the alleged loan, creating economics similar to stealing, counterfeiting and swindling.

BACKGROUND INFORMATION:  Money is not limited to just cash.  Money is anything that has value and banks or people accept as money and money does not have to be issued by the government per Federal Reserve Bank of New York publication *I bet you thought…* by David H. Friedman Fourth Edition 1984.  Page 9 explains that cash and checkbook money have equal value.  Page 27 explains that the banks create new money by depositing IOU's, promissory notes, offset by a bank liability called a checking account balance.  Page 5 says, "Money doesn't have to be intrinsically valuable, be issued by a government or be in any special form…".  Federal Reserve Bank of Chicago publication *Modern Money Mechanics* by Anne Marie L. Gonczy, revised June 1992, shows standard bookkeeping entries from pages 7 to 33 proving that money is recorded as a bank asset and a bank liability is evidence of money a bank owes.  The bookkeeping entries prove that banks accept cash, checks, drafts and promissory notes as money deposited to create checkbook money, which are bank liabilities, which show that the bank owes money to the one who deposited money at the bank.

Cash is money and promissory notes are money when banks deposit promissory notes like depositing cash.  Federal Reserve Bank of Dallas publication *Money and Banking* page 11 explains that when banks grant loans, they create new money.  The new money, new "loan becomes a new deposit, just like a paycheck does."  *Modern Money Mechanics* page 6 says, "What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts."  Then the next sentence explains that the bank assets and liabilities increase by the amount of the alleged loan.  Federal Reserve Bank of Chicago publication *ABCs of Figuring Interest* by Anne Marie L. Gonczy, November 1999, page 2 explains that by depositing money in a savings account, an individual makes a loan to the bank.  Federal Reserve Bank of Chicago publication *Public Debt: Private Asset* by Keith Feiler, revised by Tim Schilling, January 1999, page 2 explains, "The bank owes us the money that is in our account."  Now I will summarize what I believe the Federal Reserve Bank publications just said and say it in everyday language.  Conseco accepted the Mortlands' promissory note as money and deposited the money/promissory note into a transaction account with the Mortlands' name on the transaction account.  This means that Conseco recorded the promissory note as a loan **from** the Mortlands, to Conseco and Conseco became the borrower.  Conseco never lent one penny to purchase the promissory note.   When Conseco deposited the Mortlands' $67,649.33 promissory note into a transaction account, Conseco created $67,649.33 of new money.  Conseco received $67,649.33 of money from the Mortlands, and GAAP requires that Conseco record a liability account, crediting the Mortlands' transaction account, showing that Conseco owes $67,649.33 of money to the Mortlands just as if the Mortlands were to deposit cash or a payroll check into their checking account.  Conseco withdrew the $67,649.33 of money from the Mortlands' transaction account and returned the money to the Mortlands that the Mortlands earlier deposited.

I believe Conseco received the Mortlands' promissory note, the alleged loan agreement, for free which is like stealing and used the promissory note as new money when Conseco deposited the Mortlands' promissory note as money creating $67,649.33 of new money which is similar to counterfeiting and returned the $67,649.33 Conseco just took from the Mortlands to the Mortlands claiming that Conseco lent the Mortlands Conseco's money.  This is similar to stealing money from the Mortlands and returning the value of the stolen money to the Mortlands as a loan, which is similar to swindling.

It appears Conseco refused to lend the Mortlands Conseco's money and recorded a $67,649.33 loan from the Mortlands to Conseco, which is a $67,649.33 deposit, and when Conseco repaid the Mortlands by returning the $67,649.33 to the Mortlands, the lenders/alleged borrowers were repaid the loan and the transaction was complete. I believe Conseco is concealing the substance of the transaction, the bookkeeping entries, proving that the Mortlands were the lenders and Conseco was the borrower and Conseco is trying to use the form, the promissory note, to convince the Mortlands that the opposite occurred and that the Mortlands were the borrowers and not the lenders.

If Conseco claims that we are wrong, then I believe Conseco is claiming that it did not follow GAAP and that the CPA audit claiming that GAAP was followed is a fraud and that means that the CPA audit must be reissued claiming that GAAP was not followed and that the SEC must be informed of a fraud to the stockholders.

Clearly Conseco changed the cost and risk of the alleged loan by making the Mortlands the depositors and lenders to Conseco and making the alleged lender the borrower. The economics of the alleged loan are similar to stealing, counterfeiting and swindling. To understand the significance one must understand the difference between money and wealth. If one could counterfeit or steal money, one would have money to buy the world. That is why thieves, counterfeiters and swindlers are put in jail. If they were not stopped, they would own everything. Money buys things. Wealth is anything you can sell. You can sell cars, gold, silver and real estate. Employees work 40 hours a week selling their time for a payroll check. Yes, labor produces wealth such as gas for your car, food to eat, homes and cars. Counterfeiters understand that if everyone stayed home and stopped working and counterfeited, everyone would have a household full of counterfeit money to buy things but no one would be working to produce the gas, food, clothes or homes to buy. If everyone stopped working and counterfeited money, there would be no gas for your car and no food to eat. The thief and counterfeiter needs people working to produce wealth so that the counterfeiter, thief and swindler can get the producers' wealth for free. The bank gets your money for free, creates new money and returns the money they just got from you as a loan. Now you must work for the alleged lender for free or they get your home or car for free in a foreclosure. The alleged lender gets your money for free and gets your wealth for free denying you the most basic American right of equal protection.

Equal protection means that there are not two classes of citizens. One class that can steal, counterfeit and swindle the wealth of the second class of citizens. I believe that if the American voters understood the truth of what this particular bank concealed, the voters would vote to change the laws to prohibit the economics similar to stealing, counterfeiting and swindling.

I believe Conseco is using the promissory note to claim that they lent money to the Mortlands but the substance, the bookkeeping entries or GAAP, show that the opposite occurred. I believe Conseco breached the alleged loan agreement by concealing material facts and by doing the opposite of what they claimed that they had done. I believe Conseco wrote the alleged agreement and was the one executing the bookkeeping entries.

If one counterfeited money and lent it to an alleged borrower, the counterfeiter committed an illegal act and cannot use any court to collect from the alleged borrower. If Barney stole $1,000 from Boyce and returned the stolen $1,000 to Boyce as a loan, Barney cannot use the courts to force Boyce to repay the alleged loan. Barney never fulfilled the agreement to loan Boyce any of Barney's money. Stealing is illegal. The counterfeiter and Barney can say that Boyce signed a promissory note agreeing to repay a loan, but Barney breached the agreement and never lent one cent of legal consideration to Boyce. The promissory note Boyce signed is not evidence that Barney, the alleged lender, fulfilled that agreement and performed as the alleged lender advertised. Only the bookkeeping entries will prove who lent what to whom and the bookkeeping entries show that the opposite occurred. Boyce was the lender and Barney, the alleged lender, was the borrower.

According to GAAP, when the promissory note was deposited, Conseco must use a GAAP principle called *Matching* by matching a new asset, deposit of the promissory note, with a new liability showing that Conseco owes the Mortlands $67,649.33 for the $67,649.33 promissory note that Conseco deposited. The liability shows that the Mortlands were the lenders to Conseco and Conseco was the borrower and when the money was returned to the Mortlands the loan was repaid and that Conseco, borrower, no longer owes the Mortlands the money. When the loan was repaid, I believe Conseco falsely claimed that the money returned to the Mortlands was a loan from Conseco to the Mortlands, which created the economics similar to stealing, counterfeiting and swindling.

GAAP can be easily explained by casino tokens. If you deposit $100 of cash at a casino, the casino exchanges the cash for 100 tokens. The tokens are identical to crediting your checking account. The credit to your checking account and the tokens represent an IOU (liability owing you money) that the casino or bank owes you money. The casino or bank merely acted as a moneychanger, exchanging one kind of money – cash – for another kind of money of equal value called a token or checkbook money. If a casino claims it makes loans and has you sign a promissory note for $100, the casino or bank can use the promissory note like money because they can sell it for cash. The casino prints 100 new tokens like a counterfeiter and uses the value of the promissory note to give value to the 100 tokens. The tokens or bank checkbook money is worthless without something like cash or a promissory note that can be sold for cash to give value to the token. If a casino used your $100 promissory note that can be sold for $100 cash and printed up 100 new tokens and exchanged the cash or promissory note for the tokens, the casino merely acted like a moneychanger who created money based on the money the moneychanger received from you. The moneychanger never lent one cent of value to obtain your promissory note. The price of exchanging equal value of money for equal value is like charging you as if there were a loan and paying 100 percent of the money plus interest. The moneychanger received the promissory note for free, which is similar to stealing and created new money, which is similar to counterfeiting and returned the value of the stolen money as a loan making it similar to swindling. GAAP stops the economics similar to stealing, counterfeiting and swindling. GAAP claims that when the moneychanger exchanged equal value of money, that the alleged lender never lent one cent to purchase the Mortlands' promissory note. GAAP says that when Conseco/casino returns the $100 it owes Joe Gambler from the money earlier accepted as a deposit from Joe Gambler, that the loan from Joe Gambler to Conseco/casino is paid. GAAP does not show that the money returned to Joe Gambler is a

loan to Joe Gambler.  GAAP does show two loans were exchanged.  A loan from Joe Gambler was made to Conseco/casino and the money was repaid to Joe.  GAAP says if Joe Gambler lends Mike $100 and Mike repays the loan by returning $100 to Joe Gambler, the loan is repaid.  GAAP says Mike lent nothing to Joe Gambler.  It appears Conseco would claim Mike lent Joe Gambler $100 and no money was lent to Mike.

Let me try and explain how the alleged loan should work by using a simple example that anyone with any bookkeeping experience or any principles accounting course would understand.  In this particular example there are no economics similar to stealing, counterfeiting or swindling; both parties have equal protection.  You go to your neighbor, John, and ask if you may borrow $5,000.   John agrees with the following stipulations:  1.  You must sign a promissory note agreeing to repay the $5,000 plus 10% interest over the next 2 years; 2.  The promissory note must be secured by the title to your car.  John then gives you a $5,000 check and you give John the promissory note.  Now let's look at the journal entry that John will record on his personal financial statements.  Debit (increase) to *Note Receivable – Mortlands* (an asset account) for $5,000 (this records an increase in a receivable account and is what you owe John) and credit (decrease) to *Cash in Bank* (an asset account) for $5,000 (this records the decrease in John's checking account).

|  | Debit | Credit |
|---|---|---|
| Assets (*Note Receivable – Mortlands*) | $5,000 | |
| Assets (*Cash in Bank*) | | $5,000 |

Notice that both *Cash in Bank* and *Note Receivable – Mortlands* are asset accounts.  One asset (cash) decreased, one asset (note receivable) increased.  Total assets and liabilities have neither increased nor decreased.  This is logical.  Common sense says that John can not spend the same $5,000 he just loaned to you because his *Cash in Bank* account just decreased by the $5,000 he loaned to you.  Only you can now spend the $5,000.

Now let's compare the same situation as above, but instead of going to John for the loan, you go to Conseco.  Now let's look at the journal entry that I believe Conseco will record.  Debit (increase) to *Loans/Notes Receivable/Promissory Notes/Loan Account* (an asset account) for $5,000 and credit (increase) to *Borrower Deposits/Borrower's Transaction Account* (a liability account) for $5,000.  Notice in this case that *Loans/Notes Receivable/Promissory Notes/Loan Account* is an asset account and *Borrower Deposits/Borrower's Transaction Account* is a liability account.  Both accounts increased.  Total assets and total liabilities have both increased.  This is not logical.  I believe Conseco cannot increase their overall assets if they are loaning **their** assets.  But yet *Modern Money Mechanics* page 6 says, "(Banks) do not really pay out loans from the money they receive as deposits.  If they did this, **no additional money would be created** (emphasis added).   What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts.  Loans (assets) and deposits (liabilities) both rise…".  Page 24 of *Modern Money Mechanics* says, "Loans add to bank deposits…. Suppose a customer of Bank A wants to borrow $100…. The loan is made by increasing "loans" and crediting the customer's deposit account.  Now Bank A's deposits have increased by $100."  In this particular example there were economics similar to stealing,

5

counterfeiting or swindling; both parties did not have equal protection.  *Public Debt: Private Asset* page 2 explains, "The bank owes us the money that is in our account."

It appears Conseco accepted a deposit from you (the promissory note).  It appears Conseco is now falsely claiming that the money they returned to you is money they lent to you.  Returning the money that Conseco accepted from you, as a deposit is not a loan of **their** money to you.  I believe Conseco is concealing the fact that they owe you the money they deposited in your account.  When you signed the promissory note, you never knowingly agreed to give Conseco anything of value to be used like money, let alone something Conseco would deposit to your account creating the economics similar to stealing, counterfeiting and swindling.  It is obvious these material facts have been concealed.

It appears Conseco claims that the promissory note proves they lent the Mortlands money, GAAP proves that the opposite happened.

I have read and studied the alleged promissory note or installment contract between Conseco and the Mortlands.  It charges interest for the use of borrowed money.  I have not read in the document anything making the alleged borrowers the lenders and the alleged lender the borrower or that the Mortlands, the alleged borrowers, were the ones who provided the money deposited that funded the alleged loan giving the economics similar to stealing, counterfeiting and swindling.  For an agreement to be valid there must be full disclosure, mutual understanding and consideration paid between the parties.  I believe the bookkeeping entries, GAAP, will show that Conseco never lent one cent as adequate consideration to purchase the alleged promissory note and that Conseco received the money from the alleged borrowers, the Mortlands, to fund the alleged loan.  What person would claim that the ones who funded the alleged loan should not be repaid their money?  It is obvious these material facts have been concealed.

I hope this has helped to answer some of your questions.  If I can be of further service please let me know.

Sincerely,

*All Rights Reserved.*
Todd-Ellis; Swanson

Todd-Ellis; Swanson
Certified Public Accountant
All Rights Reserved.

SUBSCRIBED and AFFIRMED before Me, a Notary Public residing in Greenville County, The State of South Carolina, The above Signatory Todd-Ellis; Swanson appeared, known by Me and identified himself, and affixed His Signature hereto, the __26__ day of __December__, 2001.

_____                    Seal>>>
Notary Public Signature:

7